930 A.2d 348

Garfield George PATTERSON

v.

STATE of Maryland.

No. 83 Sept.Term, 2006.

Court of Appeals of Maryland.

Aug. 24, 2007.

Stacy W. McCormack, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), baltimore, MD, for Petitioner/Cross–Respondent.

James Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, on brief), Baltimore, MD, for Respondent/Cross–Petitioner.

ARGUED BEFORE BELL, C.J., RAKER, CATHELL,* HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER (Retired, Specially Assigned), JJ.

---

* Cathell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

GREENE, Judge.

We are asked to consider whether the warrant-issuing judge had a substantial basis for concluding that there was probable cause to believe that a particular handgun and other weapons and ammunition would be found in the residence of petitioner, Garfield George Patterson ("Patterson"). We hold that where officers obtain evidence in objectively reasonable good faith reliance on a warrant which contains some indicia of probable cause, the evidence is admissible under the *Leon* good faith exception, even where the warrant affidavit did not support the issuing judge's probable-cause determination.

## I.

### Background

#### A. Facts

The following facts are derived from the affidavit filed in support of the application for the search and seizure warrant:

On October 14, 2003, Officer Charles Haak ("Officer Haak") made a routine traffic stop of a vehicle driven by Patterson for failing to stop at a stop sign and for operating a vehicle with an inoperative brake light. Patterson provided Officer Haak with a District of Columbia driver's license. The license identified Patterson as Joe A. Miller. During the course of the stop, the officer detected the odor of burnt marijuana emanating from the vehicle. Patterson admitted that, one hour prior to the stop, he had smoked marijuana. When Officer Haak attempted to conduct a pat-down search of Patterson, "a struggle ensued culminating in [Patterson] running away." Officer Haak observed Patterson run behind 13508 Greencastle Ridge Terrace. The officer pursued Patterson and temporarily lost sight of him during the course of the pursuit. Eventually, Officer Haak regained sight of Patterson and apprehended him on the east side of a swimming pool, located behind 13508 Greencastle Ridge Terrace, near a wooded area. It appears that the chase ended when Patterson was taken to the ground. According to Officer Haak's

affidavit, as Patterson was lifted from the ground, a black, Uncle Mike's Sidekick holster was recovered from the ground underneath him.[1] Patterson was subsequently arrested. After fingerprinting him, police discovered that the driver was not Joe A. Miller, as indicated by the driver's license he produced, but that his real name was Garfield George Patterson. He was released later that same day.

The next day, October 15, at 5:00 pm, Officer Haak and three other Montgomery County Police officers, returned to the scene of the foot chase. Officer Haak interviewed Christopher Lauer, a witness who had "watched the traffic stop [of Patterson] and the ensuing events." Lauer reported that, during the chase, Patterson was "holding his right hip area as if he was concealing something" under his shirt. Lauer told Haak that, at some point during the foot chase, he also lost sight of Patterson. The police officers then searched through the area. In the wooded area where the officers and Lauer had lost sight of Patterson, Lauer located a small silver magazine containing six .22 caliber rounds.

According to Officer Haak, the size of the magazine "corresponded with the size" of the Uncle Mike's Sidekick holster

---

1. At the suppression hearing, Sergeant Robert Carter, a detective sergeant with the Montgomery County Department of Police, was called by the State to testify and presented a different version of the events surrounding the recovery of the Uncle Mike's sidekick holster. In part, he testified as follows:

[STATE]: And what was the basis of that firearm investigation?
[CARTER]: There was a patrol officer from the Montgomery County police named Officer Haak, who had arrested Mr. Patterson in the month of October. And at the time of that arrest, he had charged him with possession of marijuana and charged him under another name that the Defendant had given. After the arrest, one of the officers who assisted him came to him and produced a holster and said, "I found this along the path that you traveled during your foot pursuit." Officer Haak didn't know this, so he went back to the scene with some other police officers and they found an automatic handgun magazine lying in the same area. No gun was ever recovered.

The suppression hearing judge disregarded the inconsistency as to the discovery of the holster and accepted the fact that it was recovered from underneath Patterson, as stated in the affidavit.

that the police found. The police continued their search of the wooded area but did not locate a handgun. They returned on October 23 and October 30, more than two weeks after the foot chase, and searched the area, but never located a handgun. Following the search for a gun, Officer Haak obtained Patterson's arrest record and contacted his parole officer. Patterson's parole officer furnished Officer Haak with Patterson's permanent address, 15023 Courtland Place, Laurel, Maryland 20707.

The Montgomery County Special Assignment Team began conducting surveillance of Patterson and his two brothers.[2] Patterson was seen entering a motel room rented by one of his brothers on several occasions. Based on the results of its surveillance, the Special Assignment Team concluded that Patterson was using the motel room as his temporary residence. On November 17, 2003, thirty-four days after stopping Patterson for minor traffic violations, Officer Haak applied for a search and seizure warrant[3] to search the motel room

---

2. The affidavit filed in support of the application for the search and seizure warrant states that surveillance was conducted by Montgomery County police officers. Notwithstanding that fact, the not guilty statement of facts, read into evidence at trial, states that surveillance was conducted by members of the Prince George's County Police Department.

3. Because the content of the affidavit is central to the ultimate issue of staleness, we provide below relevant parts of the affidavit and addendum filed in support of the application for search and seizure warrant:

On 10/14/03 your affiant stopped a 1995 Oldsmobile Achieva bearing District of Columbia (DC) temporary license plate 88304DG in front of the 13508 Greencastle Ridge Terrace for failing to stop at a stop sign and having an inoperative brake light. The driver provided your affiant a DC Driver's License identifying him as Joe A. Miller with a DOB of 9/30/76. While speaking to the driver the affiant smelled what was recognized through training and experience to be burnt marijuana emanating from the passenger compartment of the vehicle. The driver stepped out of the vehicle and admitted that he had smoked marijuana in the car approximately one hour prior to being pulled over. As the affiant attempted to pat the driver down a struggle ensued culminating in Miller's running away from your affiant. A witness, Christopher Lauer, watched the traffic stop and the ensuing events. Your affiant observed the driver run behind 13508 Greencastle Ridge Terrace. The affiant continued chasing the

driver and apprehended him on East side of the swimming pool. As the driver was lifted off the ground by your affiant, Cpl. Roslyn Clark recovered a black UNCLE MIKE'S SIDEKICK HOLSTER from underneath the driver.

\* \* \* \*

A check of the ID number revealed that driver was not Joe A. Miller, but actually GARFIELD GEORGE PATTERSON with a date of birth of 09/16/76 (Miller will hereafter be referred to as Patterson.) Further investigation revealed that Patterson is currently on parole in Prince George's County, Maryland after he was convicted on or about 04/02/1999 for being an ACCESSORY TO MURDER AFTER THE FACT.

Your affiant responded back to the scene of the foot chase with three other MCP Officers on 10/15/03 at approximately 1700 hours. Upon arriving at the scene of the chase on 10/15/03 your affiant again spoke to the witness, Christopher Lauer. Lauer stated that he ... could see Patterson holding his right hip area as if he was concealing something underneath of his shirts [sic]. MCP Officers ... search[ed] the wooded area for approximately thirty minutes, your affiant heard someone say "Hey, do you guys want some bullets?" Witness Lauer had entered the woods when the officers were present and located a small silver magazine containing six (6) .22 caliber rounds. The magazine with rounds was located approximately fifteen feet into the woods from the tree line. It should be noted that the location of the magazine directly coincides with the place that Patterson was out of sight of your affiant during the foot pursuit. The size of the magazine corresponded with the size of the holster that would be used to bear a handgun located under Patterson after his arrest. A further search of the woods did not locate the firearm on 10/15/03, 10/23/03, and 10/30/03. It should be noted that MCP officers did not arrive to search the woods until after Patterson was released form custody on 10/14/03.

\* \* \* \*

Your affiant contacted Agent Sherrod with the Prince George's County Parole and Probation Division, Hyattsville office. Agent Sherrod provided your affiant with three supervision report forms that have Patterson's home address listed as 15023 Courtland Place Laurel, Maryland 20707.

\* \* \* \*

On October 30, 2003, your affiant queried the records of the FBI's National Crime Information Center and the Montgomery County Police for a Garfield George Patterson, a male, Black, with a date of birth of 09/16/1976. He learned Patterson has been arrested for the following:

| | |
|---|---|
| • Two Counts Battery | 12/03/1993 |
| • Resisting Arrest | 12/03/1993 |
| • Disorderly Conduct | 12/03/1993 |
| • Theft over $300 | 02/13/1995 |
| • Credit Card Fraud-Three Counts | 02/13/1995 |
| • Conspiracy | 02/13/1995 |
| • Concealed Weapon | 02/24/1995 |
| • Possession Pager | 02/24/1995 |

| | |
|---|---|
| • Assault & Battery | 08/27/1996 |
| • Possession Concealed Weapon | 10/22/1996 |
| • Assault 2nd Degree | 04/26/1997 |
| • Possession CDS Marijuana | 12/23/1997 |
| • Violation Ex-Parte/Protective Order | 02/26/1998 |
| • Murder | 04/15/1998 |
| • CCBW VOP Assault 2nd Degree | 04/02/1999 |
| • VOP Murder | 08/04/2000 |
| • Accessory After the Fact First Degree | 11/14/2000 |
| • CDS Possession Marijuana | 10/14/2003 |
| • Disorderly Conduct | 10/14/2003 |
| • Resisting Arrest | 10/14/2003 |
| • Assault 2nd Degree | 10/14/2003 |

The Montgomery County Special Police Assignment Team has been conducting covert surveillance on Garfield Patterson and his two brothers whom are often in his company. Officers know Garfield's brothers to be Tyrone Patterson and Rohan Patterson and are familiar with them on sight. Montgomery County Officers have observed Tyrone Patterson, Garfield's brother, drive him around in a Blue Chevy Tahoe with gold trim. Tyrone has driven Garfield from his mother's house located at 15023 Courtland Place Laurel, MD 20708 to the above listed address. Since November 4th, Montgomery County Officers have observed Garfield Patterson enter Room # 217 at the Red Roof Inn. On approximately four occasions during the night time, officers have observed Garfield enter Room 217 to have the lights go off and all activity cease in the room. The surveillance continued for approximately one hour after all activity in the room ceased. It is believed by the Special Assignment Team that Garfield is using Room # 217 as his temporary residence. Officer also contacted the front desk of the hotel and discovered that the hotel room is registered under Tyrone Patterson. Officers have observed Garfield enter Room 217 on eight of the last thirteen days.

### ADDENDUM

Based upon the aforementioned information, your affiant believes that probable cause exists that in 12525 Laurel Bowie Road Laurel MD 20708 Room # 217, there is presently concealed a firearm and/or ammunition, paperwork and documentation related to the possession, acquisition, disposition, and maintenance of firearms in Garfield Patterson's name or known alias Joe A. Miller with DOB of 09/30/1976, as well as ammunition magazines, ammunition boxes, holsters, ammunition pouches, firearm boxes, cleaning kits, bullet proof vests, firearm parts, and accessories for firearms such as grips, scopes, and slings. In addition, I believe that there are [sic] concealed paperwork and documentation related to the identity of the possessors of such items and/or occupancy of the premises, documents relating to the procurement and usage of the identity of Joe A. Miller with a DOB 09/30/1976, and any other evidence related to this criminal case. Therefore, I respectfully request a search warrant be issued for the premises, curtilage, locked boxes within the premises and curtilage, and vehicles associated with 12525 Laurel Bowie Road Laurel Maryland 20708, Room # 217.

rented by one of Patterson's brothers.[4]

In Officer Haak's application for the warrant, he swore that there was probable cause to believe that "a firearm and/or ammunition, paperwork and documentation related to the possession, acquisition, disposition and maintenance of firearms in [Patterson's] name" would be found in the motel room, as well as gun accessories and documentation related to Patterson's obtaining and using false identification. When the warrant for the motel room was executed,[5] the search team found crack cocaine, marijuana, and drug paraphernalia.

## B. Procedural History

On November 20, 2003, Patterson was charged with possession of cocaine, possession with intent to distribute cocaine, possession of marijuana, and possession of paraphernalia. Prior to trial, Patterson filed a motion to suppress the items seized during the execution of the search warrant, arguing that the warrant was invalid because it was not based on probable cause.[6] On April 16, 2004, a suppression hearing

---

4. The police also applied for, and received a warrant to search Patterson's permanent address, 15023 Courtland Place, Laurel, Maryland 20707. The warrant application and affidavit, to search that residence were essentially identical to that used to support the search of 12525 Laurel Bowie Road Laurel Maryland 20708, Room # 217.

5. The search in this case was executed, by members of the Montgomery County Police Department, on a residence located in Prince George's County. The warrant was issued by a District Court judge, sitting in Montgomery County. The District Court of Maryland is a single unified court and its judges exercise statewide uniform jurisdiction. As a result, although the warrant was issued by a Montgomery County judge for a Prince George's County residence, the judge sitting in Montgomery County had authority to issue the warrant. *See Cts. & J. Proc.* § 1–603.

6. Additionally, Patterson asked for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to resolve the discrepancy between the affidavit and the testimony of Sergeant Robert Carter as to the location of the holster at the time it was found. A *Franks* hearing
set[s] out a procedure, requiring a detailed proffer from the defense before the defendant is even entitled to a hearing to go behind the four corners of the warrant. Under *Franks*, when a defendant makes a substantial preliminary showing that the affiant intentionally or recklessly included false statements in the supporting affidavit for a

was held on the motion. The court denied Patterson's motion to suppress, reasoning that the issuing judge did not commit legal error in determining that probable cause existed to support the issuance of the search warrant.

On July 13, 2004, proceeding by way of a not guilty agreed statement of facts, Patterson was convicted of possession with intent to distribute cocaine and the lesser included offense of possession of cocaine. Additionally, Patterson was convicted of possession of marijuana. On September 2, 2004, Patterson was sentenced to 20 years of imprisonment, with all but 10 years suspended, for possession with intent to distribute. The court merged count two (possession of cocaine) into count one (possession with intent to distribute cocaine) for purposes of sentencing. With respect to the possession of marijuana charge, the court sentenced Patterson to one-year of imprisonment, to run concurrently with the 20 year sentence.

Patterson filed a notice of appeal. On appeal to the Court of Special Appeals, he argued, *inter alia,* that the Circuit Court's denial of his motion to suppress should be reversed because the warrant to search the motel room was not supported by probable cause and that "the evidence should have been suppressed because the search warrant was based on an affidavit that was so patently insufficient that the executing officers could not reasonably have believed it to be sufficient." In an unreported opinion, the Court of Special Appeals affirmed the judgment of the Circuit Court. The intermediate appellate court concluded that it was reasonable for the warrant-issuing judge to conclude that Patterson "likely kept the gun in the motel room" and that "there was [a] substantial basis for [the judge issuing the warrant] to determine that

search warrant, and that the affidavit without the false statement is insufficient to support a finding of probable cause, the defendant is then entitled to a hearing on the matter. The burden is on the defendant to establish knowing or reckless falsity by a preponderance of the evidence before the evidence will be suppressed. Negligence or innocent mistake resulting in false statements in the affidavit is not sufficient to establish the defendant's burden.

*McDonald v. State,* 347 Md. 452, 472 n. 11, 701 A.2d 675, 684–85 n. 11 (1997). The request for a Franks hearing was denied.

sufficient probable cause existed to issue the search warrant." Because the Court concluded that the warrant was supported by probable cause, it did not apply the Fourth Amendment exclusionary rule. Patterson filed a petition for writ of certiorari with this Court on September 22, 2006.[7] On October 6, 2006, the State filed a conditional cross-petition for writ of certiorari.[8] On December 6, 2006, this Court granted both the petition and conditional cross-petition. *Patterson v. State*, 396 Md. 9, 912 A.2d 646 (2006).

## II.

### Standard of Review

We must first determine whether the issuing judge had a substantial basis for concluding that the warrant was supported by probable cause. *See Greenstreet v. State*, 392 Md. 652, 898 A.2d 961(2006). As this Court noted in *Greenstreet*, to determine whether the issuing judge had a substantial basis for concluding the warrant was supported by probable cause,

> [w]e do so not by applying a *de novo* standard of review, but rather a deferential one. The task of the issuing judge is to reach a practical and common-sense decision, given all of the circumstances set forth in the affidavit, as to whether there exists a fair probability that contraband or evidence of

---

7. Questions presented:
   1. Is the presence of a holster found "underneath" the petitioner after the petitioner had been apprehended by police following a traffic stop sufficient to provide the officers with probable cause to believe that the defendant was in fact in possession of a handgun that night and that the handgun could be found thirty-four days later in a motel room rented by petitioner's brother?
   2. If not, should the evidence recovered during the search of the motel room have been suppressed where the search warrant was based on an affidavit that was so patently insufficient to establish probable cause that the executing officers could not reasonably have believed it to be sufficient?

8. The State presented the following question in its conditional cross-petition:
   Did the police act in good faith reliance on the search warrant?

a crime will be found in a particular search. *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). The duty of a reviewing court is to ensure that the issuing judge had a "substantial basis for ... conclud[ing] that probable cause existed." *Id.* The U.S. Supreme Court explained in *Gates* that the purpose of this standard of review is to encourage the police to submit to the warrant process. *Gates*, 462 U.S. at 237 n. 10, 103 S.Ct. at 2331 n. 10, 76 L.Ed.2d at 547 n. 10.

In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court explained the deference due an issuing judge's probable cause determination:

Because a search warrant provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime, we have expressed a strong preference for warrants and declared that in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall. Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination. (Quotations and citations omitted.)

\* \* \* \*

■ When reviewing the basis of the issuing judge's probable cause finding, we ordinarily confine our consideration of probable cause solely to the information provided in the warrant and its accompanying application documents. We do not consider evidence that seeks to supplement or controvert the truth of the grounds advanced in the affidavit.

*Greenstreet*, 392 Md. at 667–69, 898 A.2d at 970–71 (citations omitted).

## III.

## Discussion

### A. *Probable Cause and Staleness*

■ We turn first to the constitutional rights guaranteed by the Fourth Amendment and determine whether, at the time of the issuance of the search warrant in the case *sub judice,* there was a substantial basis for concluding that probable cause existed. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. IV. As the Supreme Court noted:

> The driving force behind the adoption of the [Fourth] Amendment, as suggested by Madison's advocacy, was widespread hostility among the former colonists to the issuance of writs of assistance empowering revenue officers to search suspected places for smuggled goods, and general search warrants permitting the search of private houses, often to uncover papers that might be used to convict persons of libel.... The available historical data show[s], therefore, that the purpose of the Fourth Amendment was to protect the people of the United States against arbitrary action by their own Government.

*United States v. Verdugo–Urquidez,* 494 U.S. 259, 266, 110 S.Ct. 1056, 1062, 108 L.Ed.2d 222, 233 *reh'g denied,* 494 U.S. 1092, 110 S.Ct. 1839, 108 L.Ed.2d 968 (1990).

■ Probable cause has been defined by this Court as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Malcolm v. State,* 314 Md. 221, 227, 550 A.2d 670, 673 (1988) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)). Probable cause is "a nontechnical conception of a reasonable ground for belief" that the items sought will be

found in the premises searched. *Edwardsen v. State,* 243 Md. 131, 136, 220 A.2d 547, 550 (1966). Probable cause involves "practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890, *reh'g denied,* 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513 (1949).

 Before conducting a search, ordinarily the police must obtain a search warrant that is, itself, based upon "sufficient probable cause to justify its issuance as to each person or place named therein." *State v. Ward,* 350 Md. 372, 387, 712 A.2d 534, 541 (1998) (quoting *People v. Easley,* 34 Cal.3d 858, 196 Cal.Rptr. 309, 671 P.2d 813, 820 (1983) *aff'd on reh'g* 46 Cal.3d 712, 250 Cal.Rptr. 855, 759 P.2d 490 (1988)). The judge issuing that warrant must "make a practical com- mon-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the 'veraci- ty' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. In making an assessment of probable cause, one of the factors the warrant-issuing judge must consider is whether the "event[s] or circumstance[s] constituting probable cause, oc- curred at ... [a] time ... so remote from the date of the affidavit as to render it improbable that the alleged violation of law authorizing the search was extant at the time...." *Peterson v. State,* 281 Md. 309, 314, 379 A.2d 164, 167 (1977), *cert. denied* 435 U.S. 945, 98 S.Ct. 1528, 55 L.Ed.2d 542 (1978) (internal citations omitted); *Sgro v. United States,* 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260, 263 (1932) (noting that "proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time"). As we noted in *Greenstreet*:

"There is no 'bright-line' rule for determining the 'stale- ness' of probable cause; rather, it depends upon the circum- stances of each case, as related in the affidavit for the warrant." *Connelly v. State,* 322 Md. 719, 733, 589 A.2d

958, 965–66 (1991) (citations omitted). Factors used to determine staleness include: passage of time, the particular kind of criminal activity involved, the length of the activity, and the nature of the property to be seized. *Peterson v. State,* 281 Md. 309, 317–18, 379 A.2d 164, 168–69 (1977) (citations omitted). The Court of Special Appeals explained the general rule of stale probable cause in *Andresen v. State,* 24 Md.App. 128, 331 A.2d 78 (1975), which we adopted in *Peterson:*

> The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed.

*Andresen,* 24 Md.App. at 172, 331 A.2d at 106. Where the affidavit in a case "recites facts indicating activity of a protracted and continuous nature, or a course of conduct, the passage of time becomes less significant, so as not to vitiate the warrant." *Peterson,* 281 Md. at 318, 379 A.2d at 168–69 (citations omitted); see also *Lee v. State,* 47 Md.App. 213, 219, 422 A.2d 62, 65 (1980) (finding probable cause stale when based upon a drug sale from defendant's apartment eleven months before application for a warrant); *Connelly,* 322 Md. at 734, 589 A.2d at 966 (concluding that probable cause could be found to be stale where the probable cause finding was based on evidence of an alleged illegal lottery operation from observations taken over a "few" months,

beginning nine months prior to application for the warrant); *Amerman,* 84 Md.App. at 475, 581 A.2d at 26 (finding probable cause not stale when based on evidence of alleged illegal drug sales from surveillance and investigation conducted one month prior to warrant application).

392 Md. at 674–75, 898 A.2d at 974–75.

Patterson contends that "the search warrant in this case was based upon a chain of speculations that fell drastically short of establishing a 'fair probability' that thirty-four days after being stopped by police for a traffic offense [Patterson] was keeping a gun in a motel room rented by his brother." In other words, Patterson argues that "the 'fair probability' . . . was that [he] had not possessed and discarded a gun in the wooded area." Patterson posits that the fact that the police discovered an empty holster underneath him was not sufficient to establish probable cause, and that even if probable cause existed on October 14, 2003, it was "clearly stale for purposes of the Fourth Amendment when the officers applied for and obtained a warrant [thirty-four] days later."

The State argues that the police had probable cause and the Court of Special Appeals' decision should be affirmed. The State asserts that "Officer Haak . . . made observations and reasonable inferences based on specific information, and came to a well-supported conclusion regarding the missing firearm." Adopting the rationale of the Court of Special Appeals, the State contends that "the application for the search and seizure warrant provided information sufficient to establish probable cause that a firearm and related items existed at Patterson's [m]otel room at the Red Roof Inn." In support of their position that "a reasonable inference is that [Patterson] retrieved [the gun] and kept it . . . at his 'temporary residence,' " the State principally cites *United States v. Steeves,* 525 F.2d 33 (8th Cir.1975), and *Lockett v. State,* 879 S.W.2d 184 (Tex.App.-Houston 1994).

In *Peterson,* this Court addressed staleness in the context of a probable cause determination. In that case, William De-Wayne Peterson's apartment was searched pursuant to a

warrant and as a result of the evidence seized therein, Peterson was convicted of possession of heroin with an intent to distribute, possession of marijuana, and possession of controlled paraphernalia. Peterson contended that the facts used to establish probable cause were stale and therefore the search and seizure was unreasonable. The Court disagreed, concluding that "traffic in illegal drugs is ordinarily a regenerating activity, and there was clear indication [in that case] that the activity was continual, a course of conduct regularly followed over a protracted time." *Peterson,* 281 Md. at 321, 379 A.2d at 170. Accordingly, viewing the affidavit as a whole, the Court held that surveillance of narcotics activities that began three months prior to the issuance of the warrant did not render the probable cause stale. *Id.*

In the case *sub judice,* the State relies on *Steeves,* 525 F.2d 33. In *Steeves,* Henry Albert Steeves appealed his conviction for unlawful receipt and possession of two rifles in violation of 18 U.S.C.A.App. § 1202(a)(1). On September 17, 1974, Steeves's house was searched by FBI agents pursuant to a warrant. During the search, two rifles were discovered and seized. The search warrant was issued "in connection with an investigation of the robbery, of a Minnesota bank, that had been committed on June 22, 1974, nearly three months before the warrant was issued." *Steeves,* 525 F.2d at 35. The warrant was issued to search for items relating to the bank robbery: "black trousers, a black waist-length jacket, a black ski mask, a .357 [M]agnum handgun and silencer, a money bag . . ., and proceeds [from] the robbery. . . ." *Steeves,* 525 F.2d at 36. On appeal, Steeves argued that because of the lapse in time between the bank robbery and the issuance of the warrant, "there was no probable cause to believe that any of the items in question were still in the defendant's home if they had ever been there." *Steeves,* 525 F.2d at 36–37. The court rejected Steeves's contention, holding that with respect to the handgun, the ski mask, and clothing, it was reasonable to believe that those items would still be in Steeves's house. *Steeves,* 525 F.2d at 38. The court explained that "people who own pistols generally keep them at home or on their persons,"

although, "apart from [Steeves's] prior felony record[,] possession of the pistol was not unlawful in itself or particularly incriminating." *Id.*

We are not persuaded that *Steeves,* aside from standing for the proposition that pistol owners store them at their home, supports the State's argument that it is reasonable to infer that Patterson retrieved the alleged weapon and kept it with him in the motel room. In fact, *Steeves* is distinguishable on several points. First, the search warrant in *Steeves* arose out of an armed robbery charge and involved a handgun used in the commission of that robbery. Second, a witness to the bank robbery in *Steeves* actually saw the perpetrator in possession of a handgun. This is in sharp contrast to the facts of this case, in which no handgun was ever seen in Patterson's possession, by the police officers or any witnesses.

In *Lockett,* agents from the Bureau of Alcohol, Tobacco, and Firearms, pursuant to a warrant, searched Freddie Raye Lockett's residence, seizing a handgun, ammunition, and a baggie containing cocaine. Lockett was subsequently convicted of aggravated possession of cocaine. On appeal, Lockett argued, *inter alia,* that "the federal warrant was based upon information that was too 'stale' to support a finding of probable cause." *Lockett,* 879 S.W.2d at 187. Holding that "the federal magistrate had a substantial basis for finding probable cause and issuing the federal search warrant," the court concluded that Lockett's possession of firearms was "of a protracted and continuous nature ... [such that] the passage of time [was] less significant." *Lockett,* 879 S.W.2d at 189.

*Lockett* and *Steeves* are distinguishable from the present case, for additional reasons. The court concluded that Lockett's possession was continuous in nature. The affidavit contained information based upon the knowledge of two informants who knew Lockett owned several firearms, and had personally viewed various firearms in Lockett's residence. No such information was included in the affidavit in the instant case. More importantly, neither *Steeves* nor *Lockett* support the inference that Patterson retrieved the handgun from the

scene of the arrest, as suggested by the State. The State, without any factual basis or reasonable inference drawn from the facts, asks this Court to accept the inference that between the time of Patterson's release from detention and the time after Officer Haak searched the area near his arrest, that Patterson returned and retrieved a handgun. The facts simply do not support such an inference. The State failed to offer any evidence that Patterson returned to the area of the chase. Without corroborating facts that support reasonable probabilities that Patterson dropped a gun and returned to retrieve it, the judge issuing the warrant had no reason to believe that Patterson would be in possession of a handgun, thirty-four days later. To draw that conclusion amounts to nothing more than mere speculation. We turn next to the particular kind of activity involved. In this case, Patterson was suspected of possessing a handgun. The State fails to make a specific argument regarding the particular kind of activity involved, but does note that "Patterson's record included arrests for concealed weapon charges and a conviction for accessory to murder after the fact." In the State's view, "[t]his reveals that firearms had a utility for Patterson and ... [also that] firearms are not the type of evidence that would be discarded." The major premise of the affidavit in support of the search warrant was that Patterson had a firearm and it was either discarded or lost during the chase. Even if we assume *arguendo* that Patterson possessed a handgun when he ran from the police, and that it would have had utility for him, there is no factual predicate to support a reasonable inference that Patterson returned to the area after his detention and retrieved it. Although, the police did conduct some surveillance of Patterson after his release, there was no evidence that he was ever seen again in the vicinity of the earlier stop and arrest.

We analyze together the next factors in the staleness analysis: passage of time and the length of the activity. The State argues that the passage of time and length of activity, thirty-four days, does not render the affidavit for the search warrant stale because "the police investigation of Patterson continued

up until the time of execution of the warrant." In the State's view, "the period of time between Patterson's arrest and the search was minimal compared to other cases where this Court and the Court of Special Appeals have found that the probable cause was, in fact, stale." In support, the State cites *Greenstreet*, 392 Md. at 652, 898 A.2d 961, *Lee v. State*, 47 Md.App. 213, 422 A.2d 62 (1980), and *State v. Amerman*, 84 Md.App. 461, 581 A.2d 19 (1990).

In *Greenstreet*, this Court's most recent decision addressing the effect of the passage of time on probable cause, the issue before the Court was whether evidence gathered from a trash seizure constituted sufficient probable cause. On April 15, 2004, Robert Earl Greenstreet's house was searched pursuant to a warrant. A quantity of marijuana was seized from the house resulting in charges against Greenstreet for possession with intent to distribute and related offenses. The supporting affidavit indicated, as the basis for probable cause, that the police conducted a trash seizure at Greenstreet's residence on April 14, 2003. Greenstreet contended that the warrant was stale, on its face, because the affidavit indicated that the trash seizure was executed more than one year before the warrant's issuance. In that case, only one date, remote in time to the issuance of the warrant, was furnished to support probable cause for the search. That evidence fell short of establishing that Greenstreet was involved in the sale of illicit drugs of a protracted and continuous nature. As a result, we concluded that "the evidence providing probable cause was stale under the circumstances of th[at] case because it facially existed at a time so remote from the date of the affidavit as to render it improbable that the alleged violation of the law authorizing the search warrant was extant at the time application was made." *Greenstreet*, 392 Md. at 677, 898 A.2d at 976.

In *Lee*, a police officer obtained a search warrant, to search Robert Edward Lee's apartment. The search of Lee's apartment resulted in the seizure of "33½ pounds of marijuana, 510 methaquadone tablets, 742 capsules of amphetamine, a scale, miscellaneous papers belonging to Lee, $7,266 in United States currency" and other drug paraphernalia. *Lee*, 47 Md.

App. at 214, 422 A.2d at 63. Lee was subsequently charged and convicted of violations of the Maryland Controlled Dangerous Substances Act. On appeal, Lee argued that the application for the warrant, on its face, was stale and failed to establish probable cause. The supporting affidavit contained several averments that the Court of Special Appeals considered to be "merely conclusory." The averment in the affidavit that the court considered not to be conclusory, stated that the police had received information from an informant, eleven months prior to the warrant application, that he had observed narcotics in the apartment. The affidavit failed to provide additional factual allegations that tended to establish that Lee was involved in an illegal activity that was continuous in nature. The intermediate appellate court concluded that the probable cause was stale because the affidavit did not indicate illegal activity of a continual nature. *Lee*, 47 Md.App. at 231, 422 A.2d at 70.

Finally, in *Amerman*, the execution of a search warrant resulted in the seizure of a large quantity of marijuana, currency, and other drug paraphernalia. Appellees, Quentin Maddox and Jennifer Amerman, who were both present in the house at the time of the search and seizure, were arrested and indicted for various narcotics violations. At the suppression hearing, the judge ruled that the warrant did not establish probable cause and also that the good faith exception did not apply. The Court of Special Appeals disagreed, concluding that the affidavit supported the notion that Maddox was involved in criminal activity that was ongoing and not "a random criminal episode." *Amerman*, 84 Md.App. at 479, 581 A.2d at 28. Accordingly, the court held that the probable cause was "reliably fresh." *Amerman*, 84 Md.App. at 482, 581 A.2d at 29. Unlike the present case, *Amerman* involved evidence of ongoing criminal activity. With the above cases in mind, we turn to the particular facts of this case.

We agree with the State that the staleness of probable cause in *Greenstreet* and *Lee* was the result of a longer period of time than that which is involved in the case *sub judice*. We reiterate, however, that "[t]he ultimate criterion in determin-

ing the degree of the evaporation of probable cause ... is not case law but reason." *Andresen,* 24 Md.App. at 172, 331 A.2d at 106. Although the police investigation in the present case continued up to the time of the execution of the search warrant, the investigation did not reveal probable cause that Patterson was in possession of a handgun. The surveillance of Patterson produced no incriminating evidence that he was involved in any illegal activities. Thus, we decline to accept the inference suggested by the State that probable cause existed to support the warrant for the search of Patterson's temporary residence. Specifically, we conclude that the inference that Patterson returned to the place of his arrest to retrieve a discarded handgun is necessary to support a finding that probable cause existed. As discussed, we find that inference is not supported by the evidence.

The question we decide is whether the warrant-issuing judge had a substantial basis for concluding that probable cause existed, at the time of the warrant application, given that there was a delay between the time of Patterson's arrest and the application for the search warrant. We discuss the inferences contained within the affidavit and highlight those that we consider reasonable. During the traffic stop of Patterson's vehicle, Officer Haak, a member of the Montgomery County Department of Police for two years, neither observed Patterson make any motions as if he was concealing a weapon nor observed a weapon inside of the vehicle or on Patterson's person. Officer Haak detected the odor of burnt marijuana. He did not observe a large quantity of drugs, such that an inference could be drawn that Patterson was involved in drug trafficking and would likely have had a weapon on his person. Although Patterson admitted to smoking marijuana earlier in the day, there is no factual predicate from which to infer, reasonably, that all persons who use marijuana possess firearms. Officer Haak asked Patterson to step out of the vehicle. Officer Haak did not report that he observed a bulge in Patterson's clothing, or made any other observation from which an officer could reasonably infer that Patterson was concealing a weapon on his person as he stepped out of the

vehicle. We conclude that, based on the circumstances of the initial stop of Patterson, the warrant-issuing judge did not have a substantial basis to believe, at the time of the issuance of the warrant, that Patterson probably would be found in possession of the gun that the police assumed he had, in his possession, on October 14, 2003. Because the warrant-issuing judge had no factual basis from which he could reasonably conclude that Patterson returned to the scene to retrieve a handgun, it would have been illogical for the judge to conclude that Patterson possessed that same gun, weeks later, in a motel room rented by his brother.

Prior to being searched, Patterson ran from Officer Haak. Patterson's flight, by itself, does not suggest that he was concealing a firearm. During the chase, a witness observed Patterson holding his right hip area "as if he was concealing something." Nonetheless, no one actually observed a handgun, or anything that resembled a handgun. During the chase, both the officer and the civilian witness lost sight of Patterson. When he was apprehended, the police discovered an empty holster underneath him. Subsequently, in the vicinity of where Patterson was apprehended, the police recovered a magazine containing bullets. Considering the similarity of the size of the magazine and the holster, Officer Haak surmised that the missing gun was of the type that would have fit the holster and the magazine that he found. Even if it were reasonable to believe that the holster and magazine connected Patterson to the gun the police suspected Patterson had prior to his arrest, in order to find probable cause that he had the gun concealed at his home thirty-four days later, the warrant-issuing judge would have had to conclude that Patterson returned to the scene to retrieve it.

After the initial stop, Officer Haak contacted the Division of Parole and Probation and obtained Patterson's permanent home address. Although Patterson's arrest record indicated that he had possessed weapons in the past, the police surveillance of Patterson established only that he resided temporarily in a motel room rented by his brother. Patterson was not seen going into the motel room with a handgun or carrying

anything that looked like a handgun. The surveillance did not establish that Patterson returned to the scene of the traffic stop to retrieve a handgun, nor did the surveillance reveal that anyone observed at the address under surveillance was in possession of a handgun. Even if we assume, *arguendo* that the police had probable cause to believe that Patterson was in possession of a handgun at the time of the initial stop, considering the passage of time and the lack of any corroborating facts to support the conclusion that Patterson was involved in any ongoing criminal activity that would connect him to the use of a handgun or that he retrieved what might have been a handgun from the area of the stop, probable cause did not exist thirty-four days later to support the issuance of a search warrant for his residence.

The focus of the argument in this Court, was that the warrant authorized a search for a particular handgun, the one that Patterson allegedly had on his person, at the time of the traffic stop. The warrant, however, may be read more broadly to authorize the search for firearms generally. The application for search warrant sought permission "to search for evidence [on the premises] of the crime of "Possession of a Firearm by a Prohibited Person and other Firearm Violations." The "Addendum" to the search warrant provided that 'there is presently concealed a firearm and/or ammunition . . .'" on the premises. The issuing judge specifically found probable cause to issue a search warrant "for evidence of the crimes of Possession of Firearms by a Prohibited Person and other Firearm Violations with the evidence being: please see attached addendum." In our view, if the warrant-issuing judge did not have a substantial basis to believe Patterson retrieved a gun from the area of his apprehension, the judge had even less of a substantial basis to believe that Patterson had any other gun stored at his temporary residence.

All the evidence obtained from the traffic stop-Patterson's flight, the holster, the magazine with bullets-is particular to the weapon Patterson was suspected of possessing at the scene of the traffic stop. There is no evidence from the traffic stop and subsequent chase to indicate that Patterson pos-

sessed more than one gun or that he had any guns at his residence. In the absence of any direct or circumstantial evidence that Patterson had a gun stored at his residence, Officer Haak must have relied on his suspicion that Patterson had a gun at the time of the traffic stop, and Patterson's subsequently discovered criminal record, to infer that Patterson possessed other firearms at his home. While a criminal record may be considered in conjunction with other evidence to determine probable cause, in this case, there was no evidence directly or inferentially reasonably related to Patterson's having a gun concealed in his home. *See Holmes v. State,* 368 Md. 506, 519, 796 A.2d 90, 98 (2002)(finding probable cause where the affidavit relied in part on the defendant's past criminal record). Patterson's criminal record, therefore, in combination with an unconfirmed suspicion that Patterson had a firearm at the scene of the traffic stop, was the primary basis for determining that a gun would be found in Patterson's home.

In reviewing cases where courts found probable cause to search a residence for a firearm, this Court in *State v. Ward,* 350 Md. 372, 379–80, 712 A.2d 534, 537 (1998) observed that "in each of the cases reviewed or cited below, there was probable cause to believe that a crime of violence, involving the use of a weapon, had been committed, that the defendant was the criminal agent, and that the defendant resided at the place to be searched." In the present case, Officer Haak suspected that Patterson possessed a gun at the time of the traffic stop, and based on that suspicion, he inferred that Patterson had a weapon stored at his home. We have said in the context of a search for contraband that "the mere observation, documentation, or suspicion of a defendant's participation in criminal activity will not necessarily suffice, by itself, to establish probable cause that inculpatory evidence will be found in the home.... There must be something more that, directly or by reasonable inference, will allow a neutral magistrate to determine that the contraband may be found in the home." *Holmes,* 368 Md. at 523, 796 A.2d at 100–101.

### B. Good Faith Exception

In light of our holding that the warrant-issuing judge did not have a substantial basis for concluding that there was probable cause, we next consider whether the good faith exception to the exclusionary rule applies in this case. The United States Supreme Court's decision in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and the companion case of *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), set forth the appropriate test for determining whether the good faith exception should be applied. The *Leon* Court outlined four situations in which an officer's reliance on a search warrant would not be reasonable and the good faith exception would not apply:

(1) the magistrate was mislead by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless regard for the truth;

(2) the magistrate wholly abandoned his detached and neutral judicial role;

(3) the warrant was based on an affidavit that was so lacking in probable cause as to render official belief in its existence entirely unreasonable; and

(4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonable presume it to be valid.

*Leon*, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. As the Supreme Court noted, "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698.

As we said in *McDonald v. State*, 347 Md. 452, 470 n. 10, 701 A.2d 675, 683 n. 10 (1997), "[t]he ultimate question of good faith *vel non* is a legal issue." (Citations omitted). To that end, a lower court's determination as to the applicability

of the *Leon* good faith exception to the exclusionary rule is reviewed *de novo* when the facts are not in dispute. *U.S. v. DeQuasie*, 373 F.3d 509, 520 (4th cir.2004). "In making this determination, we consider all of the circumstances of the case." *Id.* (Citation omitted).

The application of the good faith exception does not hinge upon the affidavit providing a substantial basis for determining the existence of probable cause. As Judge Motz, writing for the United States Court of Appeals, Fourth Circuit noted:

> If a lack of a substantial basis also prevented application of the *Leon* objective good faith exception, the exception would be devoid of substance. In fact, *Leon* states that . . . a finding of objective good faith is [prevented] . . . when an officer's affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely reasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (citations omitted). This is a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause in the first place.

*U.S. v. Bynum*, 293 F.3d 192, 195 (4th Cir.2002). With the appropriate standard in mind, we turn to the application of the good faith exception to the case *sub judice*.

Patterson contends that the Fourth Amendment exclusionary rule should apply because "[t]he warrant in this case was 'facially deficient'... and [Officer Haak] ... could not have had reasonable grounds for believing that the district court judge had properly given his application [any more than] what amounted to a rubber stamp." The State argues that the good faith exception should apply because the four instances where good faith will not apply do not exist in this case. The State contends that "it was entirely reasonable for the police to rely on the warrant" and that "the police provided logical reasoning to support the conclusion that there was a 'fair probability' that Patterson had a firearm and related items in his [m]otel room."

As noted *supra*, the first limitation to the good faith exception is where the issuing authority is "misled by information in

an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. The first limitation to the *Leon* good faith exception is inapplicable to the instant case. Patterson does not allege in his petition for certiorari, that Officer Haak misled the magistrate with information he knew was false or would have known was false but for the officer's reckless disregard for the truth.

The second limitation is applicable "in cases where the issuing judge wholly abandoned his role in the manner condemned in *Lo–Ji Sales v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. In *Lo–Ji Sales,* the Supreme Court held that search warrants that left the decision of what items were to be seized entirely up to the discretion of the executing officers were invalid. 442 U.S. at 319, 99 S.Ct. at 2319, 60 L.Ed.2d at 925. The search warrant issued in the case *sub judice* did not leave the decision of the search items to the discretion of the executing officers. The warrant specifically provided for the seizure of a "firearm and/or ammunition, paperwork and documentation related to the possession, acquisition, disposition, and maintenance of firearms in Garfield Patterson's name." Additionally, the officers were permitted to seize "ammunition magazines, ammunition boxes, holsters, ammunition pouches, firearm boxes, cleaning kits, bullet proof vests, firearm parts, and accessories for firearms such as grips, scopes, and slings." Accordingly, the search warrant issued here does not fall within this portion of the exclusions from the *Leon* rule.

The third exception created by *Leon,* where "[the] warrant [was] based on an affidavit [that was] 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'" has no application in the instant case. *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699 (internal citations omitted). This exception under *Leon* requires the application of an objective test of a police officer's good faith reliance on the search warrant. The

objective test requires that "officers, exercising professional judgment, could have reasonably believed that the averments of their affidavit related to a present and continuing violation of law, not remote from the date of their affidavit, and that the evidence sought would be likely found at [the place identified in the affidavit]." *Connelly*, 322 Md. at 735, 589 A.2d 958. The affidavit "cannot be so 'bare bones' in nature as to suggest that the issuing judge acted as a 'rubber stamp' in approving the application for the warrant." *U.S. v. Wilhelm*, 80 F.3d 116, 121 (4th Cir.1996).

An affidavit that is "bare bones" is an affidavit that might be considered to be "lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" such that the *Leon* good faith exception would not apply. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. A "bare bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Laury*, 985 F.2d 1293, 1311 n. 23 (5th Cir.1993) (citation omitted).

A mistake in the probable cause determination is obvious if "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23, 82 L.Ed.2d at 698 n. 23. A reasonably well-trained officer should know that a warrant cannot authorize an unreasonable search and that a search warrant issued on less than probable cause is illegal. *See Leon*, 468 U.S. at 960–61, 104 S.Ct. at 3445–46, 82 L.Ed.2d at 723 (Stevens J. dissenting). Additionally, a reasonably well-trained officer must know that the affidavit he or she submits has to provide the magistrate with a substantial basis for determining the existence of probable cause. *Gates*, 462 U.S. at 239, 103 S.Ct. at 2332, 76 L.Ed.2d at 549.

Notwithstanding our holding that the warrant issuing judge did not have a substantial basis to find probable cause, after assessing the facts alleged in the warrant application and the accompanying affidavit, we conclude, nonetheless, that Officer

Haak was objectively reasonable in his reliance on the District Court judge's determination of probable cause.[9] The affidavit submitted by Officer Haak was not "so lacking in indicia of probable cause as to render official belief in its existence entirely [un]reasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. Although we have determined that there was no substantial basis to support a probable cause finding, we cannot say that Officer Haak was unreasonable in relying on the warrant. The warrant application provided, although substantially weak, some indicia of probable cause. In support of his application, Officer Haak noted that the police officers removed an empty gun holster from the ground underneath Patterson and also detailed the police officers' subsequent search of the area where Patterson was apprehended, and their discovery of a magazine containing bullets. Officer Haak surmised that the magazine recovered fit the type of gun, that would have fit the empty holster. Notwithstanding that supposition, there were other facts alleged. The warrant also contained statements from an eyewitness who observed the way in which Patterson held his hip as he ran away from Officer Haak, as well as a confirmation of Patterson's address, based upon the observations of police officers stemming from their month-long surveillance of Patterson. In addition, the police outlined Patterson's criminal history. The warrant under review is supported by an affidavit based in part on the first-hand knowledge and the observations of

---

9. As the Supreme Court noted:

> It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination.... [A]n officer [cannot] obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search.

*Leon*, 468 U.S. at 923 n. 24, 104 S.Ct. at 3420 n. 24, 82 L.Ed.2d at 698 n. 24. *See also Connelly v. State*, 322 Md. 719, 728–729, 589 A.2d 958, 963 (1991); *Braxton v. State*, 123 Md.App. 599, 637, 720 A.2d 27, 45–46 (1998). Professor LaFave points out, "when the Court speaks of the good faith of the police, it is talking about their good faith *before going* to the magistrate and not about their good faith *after* they have received the warrant...." LaFave 1 *Search and Seizure* § 1.3(f), at 90.

police officers and not information from an unnamed informant or other similarly unreliable source. *See U.S. v. Wilhelm,* 80 F.3d 116, 121 (4th Cir.1996) (concluding that the affidavit was "bare bones" because, *inter alia,* it was based on information from an unnamed informant and lacked an indication of the informants' truthfulness and reliability). To that end, we cannot say as a matter of law that Officer Haak should have second-guessed the issuing-judge's determination that probable cause existed.[10] Moreover, the application for the search warrant provided sufficient evidence to create disagreement among thoughtful and competent judges as to the existence of probable cause.[11] *Leon,* 468 U.S. at 926, 104 S.Ct. at 3422, 82 L.Ed.2d at 701; *Greenstreet,* 392 Md. at 679, 898 A.2d at 977 (noting that "[w]here the defect in the warrant is not readily apparent to a well-trained officer, or, where the warrant is based on 'evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause,' then the good faith exception will

---

**10.** We noted in *Minor v. State,* 334 Md. 707, 715, 641 A.2d 214, 217 (1994) that:

> Although cases that raise the *Leon* good faith issue are to be decided on their specific facts, there is at least one common denominator among them. Implicitly these cases present a degree of tension between the role of the police officer who seeks the warrant and that of the issuing judge. A test that looks to whether the police officer knew that the warrant issued by the judge should not have been issued would seem to place the police officer in the position of reviewing the decision made by the judge, but that is not what *Leon* requires. First, the test is an objective, legal one, and is applied by the court that is asked to suppress.... Further, as *Malley* has elucidated *Leon,* the question is whether a reasonably well-trained officer would have known "that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley [v. Briggs],* 475 U.S. [335] at 345, 106 S.Ct. [1092] at 1098[, 89 L.Ed.2d 271 (1986)] (footnote omitted). Thus, the officer has no duty to second guess the judge; the officer's duty is to withhold from presentation an application for a warrant that a well-trained officer would know failed to establish probable cause.

**11.** In this case, both the issuing judge and the Circuit Court judge conducting the suppression hearing believed that there was sufficient evidence of probable cause. In addition, three judges of the Court of Special Appeals, on review of the substantial basis for issuing the warrant, believed that there was sufficient evidence of probable cause.

apply.") Therefore, Officer Haak was objectively reasonable in relying on the warrant, and there is no reason that he should have known it was improper to have applied for a warrant on the basis of the facts as alleged. Accordingly, the search warrant in the instant case does not fall under this limitation to the *Leon* good faith exception.

■■■■ Patterson contends that the fourth exception, where a warrant is facially deficient, applies. We disagree. This exception applies when the warrant at issue fails to "particularize the place to be searched or the things to be seized." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. Despite Patterson's urging, that exclusionary circumstance does not apply in this case. The affidavit and search warrant in the instant case were explicit as to the place to be searched and the items to be seized. The warrant in the instant case identified Patterson's temporary residence at "12525 Laurel Bowie Road Laurel MD 20708 Room # 217" as the place to be searched. Additionally, the warrant listed the items to be seized as including "a firearm and/or ammunition, paperwork and documentation related to the possession, acquisition, disposition, and maintenance of firearms in Garfield Patterson's name. . . ." We conclude that the warrant was not so facially deficient that the police officer could not reasonably conclude that it was valid.[12]

------

12. The dissenting opinion takes the position that this exception contains a substantive element, such that if the grounds for a warrant are insubstantial, the warrant will fail the particularity requirement even though it lists the places to be searched and the items to be seized. The effect of adding this substantive element to the particularity requirement is to merge the third and fourth *Leon* "exceptions." Because the *Leon* Court, by creating these separate "exceptions," must have intended to give different meaning to the third and fourth "exceptions," we decline to take that position. Furthermore, the *Leon* Court created these "exceptions" to illustrate four particular scenarios where a police officer would be unreasonable to rely on a warrant. *Leon,* 468 U.S. at 922–23, 104 S.Ct. at 3420–21, 82 L.Ed.2d at 698–99. Rather than dividing the fourth exception into procedural and substantive elements, the proper focus is whether the warrant was so facially deficient that the executing officers could not have reasonably relied on the warrant. *Id.* Thus, to borrow an example from the dissenting opinion, a careful and precise listing of a B–2 bomber, the original copy of Newton's

██ The exclusionary rule is designed to deter police misconduct, not to punish the errors of judges and magistrates. *See Leon,* 468 U.S. at 916, 104 S.Ct. at 3417, 82 L.Ed.2d at 694. "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon,* 468 U.S. at 921, 104 S.Ct. at 3419, 82 L.Ed.2d at 697. In this case, the purpose of the exclusionary rule, deterring police misconduct, is not achieved by suppression of the evidence because, under the circumstances, after the judge issued the warrant, "it can [not] be said that [Officer Haak] had knowledge, or may [have been] properly charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.*

Although we hold that the affidavit, in the present case, lacked a substantial basis to support the issuing judge's conclusion that probable cause existed; nonetheless, we hold that the affidavit was substantial enough to warrant application of the good faith exception. Officer Haak's affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable". *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. Therefore, the evidence obtained as a result of the search of Patterson's temporary residence was properly admitted.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**

BATTAGLIA, J., dissents and files opinion in which BELL, C.J., joins.

---

*Principia,* fairy dust and a unicorn in a warrant would be facially deficient because no reasonable police officer could expect to find these items in the place to be searched.

BATTAGLIA, Judge, dissenting.

I respectfully dissent. Having concluded, correctly in my view, that the issuing judge lacked a substantial basis for finding probable cause to support the search warrant at issue, the majority erroneously applies a hypertrophic version of the good faith exception doctrine of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), to uphold the patently unconstitutional search in the case *sub judice.* I would hold that the warrant affiant could not reasonably have relied on the warrant and that the particularity requirement is implicated whenever a search warrant enumerates items for which probable cause is as attenuated as here.

Since the Supreme Court decision in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Fourth Amendment to the U.S. Constitution [1] has been held applicable to the states by incorporation through the Fourteenth Amendment.[2] The resulting federalization of search and seizure law meant, in particular, that the states were required to follow the exclusionary rule of *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) (holding that evidence seized in violation of the Fourth Amendment generally is inadmissible at resulting criminal trial). The Supreme Court subsequently limited the application of the exclusionary rule in a series of cases, *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613,

---

**1.** "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

**2.** In relevant part, the Fourteenth Amendment states:
"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
U.S. Const. amend. XIV, § 1.

38 L.Ed.2d 561 (1974) (exclusionary rule inapplicable to grand jury proceedings); *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (exclusionary rule inapplicable to civil proceedings); *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (Fourth Amendment claims could not be raised in habeas corpus petition); *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980) (evidence illegally seized from third party admissible in criminal trial), culminating in *Leon*. Because it is well settled that Article 26 of the Maryland Declaration of Rights [3] is construed *in pari materia* with the Fourth Amendment, *Byndloss v. State*, 391 Md. 462, 465 n. 1, 893 A.2d 1119, 1121 n. 1 (2006); *Fitzgerald v. State*, 384 Md. 484, 506, 864 A.2d 1006, 1019 (2004), this Court generally has applied Supreme Court precedent to delineate the extent of the protections guaranteed by Article 26.

Although *Leon* relaxed the usual probable cause requirement [4] to the less stringent standard, "whether 'a reasonably well trained officer would have known that the search was illegal' despite the authorization from the judge," *Minor v. State*, 334 Md. 707, 717, 641 A.2d 214, 218 (1994), quoting *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23, 82 L.Ed.2d at 698 n. 23, we have never held that a judge's authorization effectively relieves the affiant from his own independent duty to act in conformity with the law. The majority in the instant case holds that a police officer may reasonably rely on an objectively unreasonable search warrant. Moreover, it is well settled that the behavior of the police officer is judged under

---

**3.** "That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted." Md. Decl. of Rights, Art. 26.

**4.** "Probable cause means a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *McDonald v. State*, 347 Md. 452, 467, 701 A.2d 675, 682 (1997), quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983).

an objective standard. *Leon,* 468 U.S. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698. Therefore, the majority holding today countenances objectively reasonable reliance on an objectively unreasonable search warrant. Because this holding is logically impossible, I dissent.

## I. The Good Faith Exception to the Exclusionary Rule

As the majority points out, *Leon* explicated four circumstances under which the exclusionary rule would still apply, and provided that, under those circumstances, a reviewing court should infer that the warrant affiant did *not* act in good faith. *Ante* at 104, 930 A.2d at 365. Those "exception[s] to the exception," [5] *Minor,* 334 Md. at 722, 641 A.2d at 221 (Bell, J., dissenting), include: (1) cases where the warrant affidavit was procured with "knowing or reckless falsity," *Leon,* 468 U.S. at 914, 104 S.Ct. at 3416, 82 L.Ed.2d at 693; *Franks v. Delaware,* 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667, 678 (1978); (2) cases where the judge or magistrate has abandoned all pretense of neutrality and functions effectively "as a rubber stamp for the police," *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723, 727 (1964), or where the magistrate acts as "an adjunct law enforcement officer," *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 327, 99 S.Ct. 2319, 2325, 60 L.Ed.2d 920, 929 (1979); (3) cases where a warrant was issued in reliance on an affidavit that fails to provide " 'a substantial basis for determining the existence of probable cause'," *Leon,* 468 U.S. at 915, 104 S.Ct. at 3416, 82 L.Ed.2d at 693, quoting *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 549 (1983); and (4) cases where a warrant is " 'so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.' " *Greenstreet v. State,* 392 Md. 652, 679, 898 A.2d 961, 977

---

5. As then Judge Robert M. Bell noted in his dissenting opinion in *Minor v. State,* 334 Md. 707, 720 n. 1, 641 A.2d 214, 220 n. 1 (1994) (Bell, J., dissenting), the Supreme Court itself was unclear whether the good faith exception was "an exception or intended to be the rule."

(2006), quoting *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699.

Clearly, exceptions (1) and (2) are inapposite here. The majority quotes language from *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699, to cast exception (3) as whether "the warrant was based on an affidavit that was so lacking in probable cause as to render official belief in its existence entirely unreasonable...." *Ante* at 104, 930 A.2d at 365. Although it is undisputed that such a circumstance would invalidate a search conducted in reliance on that warrant, the majority overlooks the following passage from *Leon:*

> Third, reviewing courts will not defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause." "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Even if the warrant application was supported by more than a "bare bones" affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances,* or because the form of the warrant was improper in some respect.

*Id.* at 915, 104 S.Ct. at 3416–17, 82 L.Ed.2d at 693–94 (emphasis added) (citations omitted).

The *Leon* Court further noted, "[i]n so limiting the suppression remedy, we leave untouched the probable-cause standard and the various requirements for a valid warrant." *Id.* at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. In particular, the probable cause standard left untouched was that explicated one year earlier in *Gates:*

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is

simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. 462 U.S. at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548 (alteration in original), quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 708 (1960). Likewise, the "various requirements for a valid warrant" were embodied in the *Gates* totality-of-the-circumstances test.[6]

In the instant case, the majority finds the search warrant deficient when measured by the *Gates* test. As I will explain subsequently, the test contemplated in *Gates* and applied in the case *sub judice* is not a de novo review of the ultimate legal conclusion of the warrant-issuing judge; rather, our review extends "great deference" to the judge's decision. *Id.* at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. The *Gates* Court held that the proper standard of appellate review of search warrants was whether "the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing...." *Id.* (citation omitted). Under that deferential standard, the majority correctly holds that the judge lacked a "substantial basis" for issuing the search warrant.

The majority cites the opinion of Judge Diana Gribbon Motz of the U.S. Court of Appeals for the Fourth Circuit in *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir.2002), for the proposition that " '[s]ubstantial basis' provides the measure for determination of whether probable cause exists in the first instance." In support of that contention, Judge Motz cites *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). *Harris* applied the substantial basis test to determine whether an informant's hearsay could be relied

---

6. *Gates* overruled a previous test for appellate review of search warrants known as the *Aguilar–Spinelli* test. In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court had developed a two-pronged test that required independent evidence of an informant's reliability and basis of knowledge. *See Stanley v. State*, 19 Md.App. 507, 313 A.2d 847 (1974). *Gates* relaxed the two-pronged test, requiring instead only that the evidence submitted to a magistrate satisfy a flexible totality-of-the-circumstances standard.

upon in support of a search warrant. Nowhere in *Harris* did the Court address the existence *vel non* of probable cause; the entire focus of *Harris* was whether the magistrate's determination was reasonable. *Id.* at 579–80, 91 S.Ct. at 2080, 29 L.Ed.2d at 731. In Part II of the opinion by Chief Justice Warren E. Burger, a *total* of only three Justices reviewed the magistrate's determination under a deferential standard of review, *Harris,* 403 U.S. at 580–83, 91 S.Ct. at 2080–82, 29 L.Ed.2d at 732–33 (Burger C.J., joined by Black and Blackmun, JJ.); the *Harris* Court took a first step towards the eventual overruling of *Aguilar,* 378 U.S. at 108, 84 S.Ct. at 1509, 12 L.Ed.2d at 723, and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), that culminated some twelve years later in *Gates.*

The distinction lost on the majority in the instant case is the difference between whether there actually *was* probable cause, and simply whether an issuing judge *could* have determined that there was probable cause. When *Leon* was decided, Justice William J. Brennan penned a vigorous dissent in which he pointed out the redundancy of the third *Leon* prong and the holding of *Gates,* and questioned the necessity for reaching the issue decided in *Leon* when it was likely that the lower courts would have reached the same result on remand simply by applying *Gates. Leon,* 468 U.S. at 958–59, 104 S.Ct. at 3444–45, 82 L.Ed.2d at 721–22 (Brennan, J., dissenting). Unfortunately, not even Justice Brennan could foresee the full enormity that would result from *Leon* and its progeny:

> Given such a relaxed standard [as *Gates* ], it is virtually inconceivable that a reviewing court, when faced with a defendant's motion to suppress, could first find that a warrant was invalid under the new *Gates* standard, but then, at the same time, find that a police officer's reliance on such an invalid warrant was nevertheless "objectively reasonable" under the test announced today. Because the two standards overlap so completely, it is unlikely that a warrant could be found invalid under *Gates* and yet the police reliance upon it could be seen as objectively reasonable; *otherwise, we would have to entertain the mind-boggling*

*concept of objectively reasonable reliance upon an objectively unreasonable warrant.*

*Id.* (emphasis added). Unfortunately, the majority in the present case entertains exactly that "mind-boggling concept" and holds that the police officer could reasonably rely on an objectively unreasonable search warrant.

## II. Probable Cause, Substantial Basis and Standards of Review

The notion of "substantial basis" arises in the context of appellate review of search and seizure, not the determination of probable cause *per se.* In *Greenstreet,* 392 Md. 652, 898 A.2d 961, we recently explicated the process that appellate courts undertake in reviewing contested search and seizure warrants. "We determine first whether the issuing judge had a substantial basis to conclude that the warrant was supported by probable cause." *Id.* at 667, 898 A.2d at 970. In so doing, we do not apply a de novo standard of review; rather, we apply a deferential standard. *Id.* The task of the issuing judge is to determine the existence of probable cause, *i.e.,* "to make a practical, common-sense decision whether, given all the circumstances . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 667–68, 898 A.2d at 970, citing *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. The task of the appellate court, however, is to determine *only* if there exists a substantial basis for the issuing judge's decision that probable cause existed. This cannot be the same as the legal determination whether probable cause existed in the first place.

In *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the Supreme Court reviewed a *warrantless* search and held that the standard of review was de novo. The Court explained that "the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case" but that such findings "are respected only insofar as consistent with federal constitutional guarantees" and in any event, "findings of state courts are by no means insulated against examination"

by the Supreme Court. *Id.* at 33–34, 83 S.Ct. at 1630, 10 L.Ed.2d at 738. The Court stated that "[w]hile this Court does not sit as in *nisi prius* to appraise contradictory factual questions, it will, where necessary to the determination of constitutional rights, make an independent examination of the facts, the findings, and the record so that it can determine for itself whether in the decision as to reasonableness the fundamental—*i.e.,* constitutional—criteria established by this Court have been respected." *Id.* at 34, 83 S.Ct. at 1630, 10 L.Ed.2d at 738. Therefore, the existence of probable cause *per se* is a mixed question of law and fact susceptible to de novo review. *See, e.g., United States v. McConney,* 728 F.2d 1195, 1203 (9th Cir.1984); 6 Wayne R. LaFave, *Search & Seizure* § 11.7(c) (4th ed. 2004).

By contrast, substantial basis appellate review of the judge's decision to issue a warrant has been deemed by some courts tantamount to review under the clearly erroneous standard. *See, e.g., United States v. Spears,* 965 F.2d 262, 269 (7th Cir.1992); 6 LaFave, at § 11.7(c). Indeed, the Court of Special Appeals has taken the view that substantial basis review is even *more* deferential than clear error review. *See, e.g., State v. Coley,* 145 Md.App. 502, 521, 805 A.2d 1186, 1198 (2002); *State v. Amerman,* 84 Md.App. 461, 472, 581 A.2d 19, 24 (1990). Substantial basis review already affords the benefit of the doubt to the State, permitting the admission of evidence seized pursuant to warrants that would not withstand de novo review. Judge Charles E. Moylan of the Court of Special Appeals explained just how much deference substantial basis review grants the issuing judge:

> Under the circumstances, it is perfectly logical and not at all unexpected that a suppression hearing judge might say, "I myself would not find probable cause from these circumstances; but that is immaterial. I cannot say that the warrant-issuing judge who did find probable cause from them lacked a substantial basis to do so; and that is material."

*Amerman,* 84 Md.App. at 464, 581 A.2d at 20. *See also United States v. Ritter,* 416 F.3d 256, 263–64 (3d Cir.2005)

("Were we reviewing the magistrate's decision *de novo*, we might reach a different result. However, the Supreme Court has charged us, when reviewing the sufficiency of an affidavit and resulting warrant, not to engage in 'after-the-fact scrutiny' that 'take[s] the form of *de novo* review.' ") (alteration in original), quoting *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547.

The Supreme Court explained the policy considerations undergirding its decision to grant deference to the warrant-issuing magistrate. Its principal concern was that police, if confronted with a hypertechnical warrant process subjected to detailed judicial scrutiny, would be tempted to skip the warrant process altogether. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547 ("If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search.").

Even though the warrant application process is ex parte, *Leon*, 468 U.S. at 970 n. 22, 104 S.Ct. at 3451 n. 22, 82 L.Ed.2d at 729 n. 22 (Stevens, J., concurring and dissenting); *Franks*, 438 U.S. at 169, 98 S.Ct. at 2683, 57 L.Ed.2d at 680, and a reviewing court sees essentially the same record as the issuing judge, the Court nonetheless has adopted a deferential rather than a de novo standard for the express purpose of encouraging the police to apply for warrants. *See Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920 (1996), *rev'g United States v. Ornelas–Ledesma*, 16 F.3d 714 (7th Cir.1994) (The Supreme Court determined that warrantless searches are subject to de novo review rather than the *Gates* substantial basis test applicable to review of search warrants, stating explicitly that "the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches."). As the *Leon* Court stated:

Because a search warrant "provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime,'" we have expressed a strong preference for warrants and declared that "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according "great deference" to a magistrate's determination.

468 U.S. at 913–14, 104 S.Ct. at 3415–16, 82 L.Ed.2d at 692–93 (citations omitted). *See United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965) ("A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.").

The majority erroneously conflates the deferential substantial basis standard of appellate review applicable to the issuance of search and seizure warrants with the legal determination of probable cause *per se.* The majority errs in adopting the analysis of *Bynum,* 293 F.3d at 195, where it states, "[i]f a lack of a substantial basis also prevented application of the *Leon* objective good faith exception, the exception would be devoid of substance." *Ante* at 105, 930 A.2d at 366. The Supreme Court itself, however, stated the *exact opposite* of *Bynum* and today's holding. See *Leon,* 468 U.S. at 915, 104 S.Ct. at 3416, 82 L.Ed.2d at 693, quoting *Gates,* 462 U.S. at 239, 103 S.Ct. at 2332, 76 L.Ed.2d at 549, where the Court said, "reviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause'." The *Bynum* court and the majority today fail to appreciate the fact that deferential review *already* permits borderline cases to proceed in favor of the State. To maintain as they do that an affiant may reasonably rely on a warrant that does not

satisfy even substantial basis review would amount as a practical matter to holding that the decision of a judge to issue a warrant is not susceptible to appellate review. That cannot be a correct statement of the law. Indeed, the *Leon* Court said, "[d]eference to the magistrate . . . is not boundless." 468 U.S. at 914, 104 S.Ct. at 3416, 82 L.Ed.2d at 693. The Court pointed out that a police officer's good faith belief that he is acting in accord with the Fourth Amendment is insufficient in the absence of an objective basis for that belief. *Id.* at 915 n. 13, 104 S.Ct. at 3416 n. 13, 82 L.Ed.2d at 693 n. 13. The objective determination of the affiant's good faith can come only from an external source. In the usual case where there is no evidence of deliberate falsification in the warrant application, *Franks,* 438 U.S. at ——, 98 S.Ct. at ——, 57 L.Ed.2d at ——, that external source can only be the four corners of the warrant itself and its supporting affidavit. *Greenstreet,* 392 Md. at 669, 898 A.2d at 971; *Valdez v. State,* 300 Md. 160, 168, 476 A.2d 1162, 1166 (1984). In the instant case, that warrant has been found *objectively unreasonable* by this Court.

What the majority proposes is to insulate *further* the actions of the affiant from appellate review by holding that the officer acted in good faith despite our holding that the warrant *clearly* was unsupported by probable cause. Moreover, the inevitable result of the holding today is "to convey a clear and unambiguous message to [judges] that their decisions to issue warrants are now insulated from subsequent judicial review." *Leon,* 468 U.S. at 956, 104 S.Ct. at 3443, 82 L.Ed.2d at 720 (Brennan, J., dissenting).

### III. The Particularity Requirement

The Fourth Amendment was enacted in large part to prohibit the odious British practice of general warrants that permitted virtually unlimited searches of private dwellings and places of business. *See Minnesota v. Carter,* 525 U.S. 83, 94, 119 S.Ct. 469, 475, 142 L.Ed.2d 373, 383 (1998) (Scalia, J., concurring), citing *Semayne's Case,* 77 Eng. Rep. 194 (K.B. 1604) and 4 Sir Edward Coke, *Institutes of the Laws of England* 176–177 (1797) for the proposition that the Magna

Carta had outlawed "general warrants based on mere surmise"; *Arizona v. Evans,* 514 U.S. 1, 23, 115 S.Ct. 1185, 1197, 131 L.Ed.2d 34, 52 (1995) (Stevens, J., dissenting) ("The use of general warrants to search for evidence of violations of the Crown's revenue laws understandably outraged the authors of the Bill of Rights."); *Lo–Ji Sales,* 442 U.S. at 325, 99 S.Ct. at 2323, 60 L.Ed.2d at 927 ("This search warrant and what followed the entry on petitioner's premises are reminiscent of the general warrant or writ of assistance of the 18th century against which the Fourth Amendment was intended to protect."). The result was the fundamental requirement that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized."* U.S. Const. amend. IV. (emphasis added). That search warrants must "particularly describe ... the things to be seized" is so elementary that courts have become inured to its implications. The majority today effectively would obviate the particularity requirement by holding the fourth *Leon* exception inapplicable to the case *sub judice.*

The warrant at issue particularly described a physical location, 12525 Laurel Bowie Road, Room 217, and a list of things to be seized that included "a firearm and/or ammunition, paperwork and documentation related to the possession, acquisition, disposition, and maintenance of firearms in Garfield Patterson's name or known alias ... as well as ammunition magazines, ammunition boxes, holsters, ammunition pouches, firearm boxes, cleaning kits, bullet proof vests, firearm parts, and accessories for firearms...." The fact that the warrant enumerated, with seemingly impressive precision, a lengthy roster of items does *not* necessarily mean that the warrant satisfied the particularity requirement. By so holding today, the majority elevates form over substance and denies that the particularity requirement has any substantive meaning. The clear conclusion from this record is that only on the basis of wildly improbable hunches was there any reason whatsoever to believe that there was "a fair probability" that the Petition-

er possessed any of the enumerated articles on November 17, 2003.

The warrant in the case *sub judice* violated the particularity requirement. *Groh v. Ramirez*, 540 U.S. 551, 557, 124 S.Ct. 1284, 1289, 157 L.Ed.2d 1068, 1078 (2004) (holding that search warrant failed particularity when it failed to incorporate by reference a facially valid affidavit); *Giles v. State*, 10 Md.App. 593, 597, 271 A.2d 766, 768 (1970) (conviction reversed because search warrant was blank in positions provided for name and place to be searched, and warrant failed to incorporate a supporting affidavit by reference). The warrant purported to "particularly describe" items to be seized that could not reasonably have been expected to be found in Room 217 of the Red Roof Inn, and in fact never were found. Moreover, pursuant to Article 26, the General Assembly in 1939 [7] enacted a statute mandating, *inter alia,* that "[t]he search warrant shall ... name or describe, with reasonable particularity ... the person, building, apartment, premises, place, or thing to be searched; [and] the grounds for the search[.]" Md.Code (1957, 2001 Repl.Vol. & 2006 Supp.), Section 1–203(a)(3)(ii) of the Criminal Procedure Article. Because the grounds for the search in the present case were so insubstantial, it is clear that the search also violated Section 1–203(a)(3)(ii).

One wonders whether the majority's reasoning would apply if the warrant application had carefully and precisely listed a B–2 bomber, the original copy of Newton's *Principia,* fairy dust and a unicorn as the items to be seized. Obviously the point is to illustrate by means of a deliberately absurd example that the particularity requirement *must* carry a substantive meaning in addition to any formal or procedural aspect. I submit that when a warrant fails substantial basis review because its factual underpinnings are as patently insubstantial as in this case, then it will also be true that the warrant fails

---

7. *See* 1939 Md. Laws, Chap. 749. Senate Bill 116 was passed and subsequently signed into law May 11, 1939, and was codified at Maryland Code (1939), Article 27, Section 306. The language quoted in the text above has remained unchanged substantively to this day.

under the particularity requirement. Moreover, "[a]lthough the Court's opinion tends to overlook this fact, the requirement of particularity is not a mere 'technicality,' it is an express constitutional command." *Leon,* 468 U.S. at 947, 104 S.Ct. at 3439, 82 L.Ed.2d at 714 (Brennan, J., dissenting).

When viewed in light of the plain view doctrine, *see, e.g., Minnesota v. Dickerson,* 508 U.S. 366, 374–75, 113 S.Ct. 2130, 2136–37, 124 L.Ed.2d 334, 345 (1993); *Horton v. California,* 496 U.S. 128, 136–137, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112, 122–23 (1990); *Michigan v. Long,* 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201, 1220 (1983), today's decision assumes a more ominous tone. By upholding the search at issue in this case, the majority gives its imprimatur to a grave abuse of the warrant process. If the good faith exception applies here, then the inevitable effect will be to obviate the particularity requirement, because today's decision effectively permits the issuance of a general warrant. Article 26 of the Maryland Declaration of Rights commands that "all general warrants ... are illegal, and ought not to be granted." I cannot join the majority in permitting such a "grievous and oppressive" practice.

## IV. Maryland Cases Under the Good Faith Exception

A review of our cases illustrates the anomaly of the majority decision in the instant case. In *Greenstreet,* 392 Md. at 652, 898 A.2d at 961, a search warrant had been issued on the basis of incriminating evidence discovered in a search of discarded trash pursuant to *California v. Greenwood,* 486 U.S. 35, 37, 108 S.Ct. 1625, 1627, 100 L.Ed.2d 30, 34 (1988) (trash left for collection outside the curtilage of a home may be searched without a warrant). The listed date of the trash search was more than one year prior to the date of warrant execution, and we applied the four corners rule to hold that the warrant on its face was stale and consequently, that the evidence gathered pursuant to the warrant must be excluded. *Greenstreet,* 392 Md. at 661, 898 A.2d at 966. The State argued that the good faith exception should apply, in part because extrinsic evi-

dence [8] strongly suggested that the date noted on the warrant was a typographical error, but "we [did] not conclude that a reasonable, well-trained police officer executing the warrant would believe that the warrant authorized the search because the lack of probable cause [was] apparent on the face of the affidavit when the evidence giving rise to a belief in probable cause [was] a year old and [did] not indicate continuing criminal activity." *Id.* at 683, 898 A.2d at 979.

In *McDonald v. State*, 347 Md. 452, 701 A.2d 675 (1997), the appellant was convicted of possession of CDS with intent to distribute, having lost a suppression hearing, at which he argued that the search warrant was defective because it was anticipatory [9] and because it was unsupported by probable cause. *Id.* at 456, 701 A.2d at 677. Police suspicion had been aroused when a UPS investigator discovered during a random check a package containing CDS that was addressed to the premises in question. *Id.* at 456–57, 701 A.2d at 677. The police subsequently filed an application for a search warrant for the address disclosed by UPS, and arranged for a controlled delivery. *Id.* at 457–59, 701 A.2d at 677–78. After the controlled delivery, the police executed the search warrant and discovered the appellant in possession of contraband. *Id.* at 460, 701 A.2d at 679.

The State argued successfully that the good faith exception applied. *Id.* at 463, 701 A.2d at 680. In its analysis, the Court avoided the question whether the warrant itself was supported by probable cause, looking instead to the four-pronged *Leon* test. *Id.* at 469, 701 A.2d at 683. In holding that the appellant had failed to demonstrate that any of the "exceptions to the exception" outlined in *Leon* were applicable, the Court noted

---

8. The regular trash collection day for the premises in question was consistent with the State's interpretation of a typographical error, a point that apparently swayed the Court of Special Appeals. *State v. Greenstreet*, 162 Md.App. 418, 435–36, 875 A.2d 177, 187 (2005).

9. At the time, the constitutionality of anticipatory search warrants was an open question, *McDonald*, 347 Md. at 463–64, 701 A.2d at 680; subsequently, the Supreme Court upheld the practice. *See United States v. Grubbs*, 547 U.S. 90, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006).

that: (1) the appellant never argued that the issuing judge had been misled through deliberate falsehood or reckless disregard for the truth by the warrant affiant,[10] *id.* at 471, 701 A.2d at 684; (2) there was nothing in the record to support the notion that the issuing judge had abandoned his impartiality,[11] *id.*; (3) "the affidavit was not so lacking in indicia of probable cause that it was unreasonable for the officers to rely upon it . . . [because] [t]he warrant application contained several objective facts from which the officers could have reasonably concluded that there was probable cause to search" the premises, *id.* at 472, 701 A.2d at 685; and (4) the warrant itself was not " 'so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers [could not] reasonably presume [the warrant] to be valid.' " *Id.* at 473, 701 A.2d at 685, quoting *Connelly v. State*, 322 Md. 719, 729, 589 A.2d 958, 963 (1991).

In *Minor*, 334 Md. at 707, 641 A.2d at 214, this Court examined the third *Leon* exception and its applicability to the suppression of CDS evidence uncovered through a search for stolen goods. The police officer had been investigating the theft of a motorcycle and had reason to believe, based on the word of a confidential informant, that the motorcycle was stored at a particular residence. *Id.* at 710–11, 641 A.2d at 215. When the warrant was executed, the police did not find the motorcycle, but did discover a quantity of CDS, a box of razor blades and a triple beam balance scale. *Id.* at 711, 641 A.2d at 215. The appellant noted an appeal after convictions were entered pursuant to a not guilty statement of facts; he challenged the denial of his suppression motion on the basis that the search warrant was unsupported by probable cause because the affidavit was silent about the informant's reliability and his basis of knowledge.[12] In upholding the convictions,

10. In other words, *McDonald* held that *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), was inapposite.

11. In other words, *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979), was inapposite.

12. Although the Supreme Court by this time had abrogated the *Aguilar–Spinelli* test that previously required in a probable cause determination

this Court determined that the investigating officer had made a good faith effort to comply with the requirements of *Gates*, 462 U.S. at 213, 103 S.Ct. at 2317, 76 L.Ed.2d at 527, in her presentation of corroborating information in the warrant application. *Minor*, 334 Md. at 715–16, 641 A.2d at 217–18.

In *Connelly*, 322 Md. at 719, 589 A.2d at 958, the petitioner had been convicted of violations of lottery and gambling laws on the basis of evidence seized during the execution of what the State later conceded was a defective search warrant. The petitioner argued unsuccessfully at his suppression hearing that the search warrant was unsupported by probable cause because it was issued nine months after the surveillance cited in the affidavit, and because the " 'numerous occasions' described in the affidavit were not specific as to dates." *Id.* at 723–24, 589 A.2d at 961. In its analysis of the issue, the *Connelly* Court followed *Leon* in confining its inquiry " 'to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.' " *Id.* at 730, 589 A.2d at 964, quoting *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23, 82 L.Ed.2d at 698 n. 23. Because the issue of staleness as construed in light of *Peterson v. State*, 281 Md. 309, 379 A.2d 164 (1977), could have supported *either* the ruling below in *Connelly* by the Court of Special Appeals that probable cause was stale, *or* that the affidavit furnished evidence of a continuing criminal enterprise and thus was legally sufficient, *Connelly*, 322 Md. at 734, 589 A.2d at 966, this Court held that the police "could have reasonably believed that the averments of their affidavit related a present and continuing violation of law, not remote from the date of their affidavit, and that the

---

that the warrant affidavit independently satisfy both veracity and basis-of-knowledge tests, and that an informant's reliability constituted part of the veracity prong, the Court did *not* completely abandon consideration of an informant's reliability, credibility, veracity or basis of knowledge, but had merely reduced their stature to that of factors to be weighed in a totality-of-the-circumstances analysis. *See Gates*, 462 U.S. at 230–33 & n. 6, 103 S.Ct. at 2328–29 & n. 6, 76 L.Ed.2d at 543–45 & n. 6.

evidence sought would likely be found at Connelly's store and at his residence." *Id.* at 735, 589 A.2d at 967.

## V. Conclusion

The facts of the instant case are more similar to *Greenstreet* and less similar to *McDonald, Minor* and *Connelly.* It is clear that the affidavit in the instant case supported, at most, that probable cause to believe Patterson possessed a handgun existed just prior to the time of his October 14, 2003 encounter with Officer Haak. The notion that probable cause existed that Patterson possessed a handgun at Room 217 of the Red Roof Inn some thirty-four days later, when the only evidence tended to show that Patterson did not possess the weapon at the time of his arrest October 14, flies squarely in the face of reality. Moreover, the fact that the warrant on its face appears to comport with particularity should not save this search from constitutional infirmity. The majority itself concedes that the question of good faith applies to the *affiant,* not only to other police officers who subsequently rely on the warrant, *ante* at 108 n. 9, 930 A.2d at 367 n. 9, because to hold otherwise would permit a police officer to knowingly swear out an invalid warrant, pass the tainted warrant to other officers to execute, and then rely on the good faith of those officers who were unaware of the taint. *See Leon,* 468 U.S. at 923 n. 24, 104 S.Ct. at 3420 n. 24, 82 L.Ed.2d at 698 n. 24.

Simply because "probable cause is a fluid concept," *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329, 76 L.Ed.2d at 544, does not mean that police officers " 'may [not] properly be charged with knowledge [ ] that [a] search was unconstitutional under the Fourth Amendment,' " under appropriate circumstances. *Leon,* 468 U.S. at 919, 104 S.Ct. at 3419, 82 L.Ed.2d at 696, quoting *United States v. Peltier,* 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374, 384 (1975). To hold that under the circumstances presented, the police acted in good faith in presenting their warrant application would call into question whether it is even possible for a reviewing court to find an absence of good faith. As then Judge Bell pointed out in his dissenting opinion in *Minor,* "a reasonably well-trained police

officer would not submit an affidavit to a magistrate for a probable cause determination that the officer knows, or should know, does not establish probable cause," 334 Md. at 727, 641 A.2d at 223 (Bell, J., dissenting), because that hypothetical officer is chargeable with knowledge of what the Fourth Amendment prohibits, subject to its subsequent interpretation in *Gates* and *Leon. Id.* at 724–26, 641 A.2d at 222–23. I would hold that, in the case *sub judice*, Officer Haak knew or should have known that Patterson almost certainly possessed neither the weapon nor the accessories referenced in the warrant application and therefore, the good faith exception does not apply. I respectfully dissent.

Chief Judge BELL authorizes me to state that he joins in this dissent.